
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
JAMES F. PELCZAR,

                Plaintiff,

           - against -

DOREEN M. PELCZAR, *et al.*,

                Defendants.
------------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**
18-CV-6887 (AMD) (LB)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff, James F. Pelczar, brought this action under Article 15 of the Real Property Actions and Proceedings Law ("RPAPL") against his sister, Doreen M. Pelczar, and her attorneys, for what he claims was the fraudulent transfer of his parents' estate to Ms. Pelczar. (ECF No. 1.) In February of 2019, the defendants moved to dismiss the action (ECF Nos. 15, 18), and the plaintiff opposed the motions (ECF No. 20-2). For the reasons that follow, I grant the defendants' motion to dismiss.

I.    **BACKGROUND**[*]

---

[*] The facts are taken from the complaint and the plaintiff's opposition. (ECF Nos. 1, 20-2.) "[A]lthough courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a pro se plaintiff's papers liberally as allowing for consideration of such allegations." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15–CV–5693, 2017 WL 9485647, at *1, n.1 (E.D.N.Y. Feb. 23, 2017), *report and recommendation adopted*, No. 15–CV–5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks and citation omitted) (collecting cases). I take judicial notice of the plaintiff's filings in prior actions in Queens Surrogate Court (*In re Alfred S. Pelczar*, No. 2014-2284), the Second Department (*Pelczar v. Kelly, et al.*, Index No. 2016-04132), and the Eastern District of New York (*Pelczar v. Pelczar*, No. 16-CV-55), as the Court may consider matters of public record when deciding a motion to dismiss. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 Fed. Appx. 27, 29 (2d Cir. 2006). However, I consider the documents filed "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

1

This action arises out of a dispute over the property at 7-22 151st Place in Whitestone, New York. (ECF No. 1 at ¶ 19.) The property belonged to the parents of the plaintiff and Ms. Pelczar, Josephine C. Pelczar and Alfred S. Pelczar, who transferred the property into the Alfred S. Pelczar and Josephine C. Pelczar Irrevocable Trust (the "Trust") in 1997. (*Id.* at ¶ 14.) Josephine Pelczar died in 2001. (*Id.* at ¶ 15.) When Alfred Pelczar died in 2014, Ms. Pelczar initiated probate proceedings for her father's estate in Queens County Surrogate's Court. (*Id.* at ¶¶ 16, 18.)

In his will, Alfred Pelczar disinherited the plaintiff, leaving him only $1,030.00, (ECF No. 18-1), because the plaintiff had not "communicated with [Alfred Pelczar] for about eleven (11) years," which "clearly demonstrate[d] his disdain and contempt" for his father. (*Id.* at 1-2.) The will also bequeathed the Whitestone Property to Ms. Pelczar by invoking Alfred Pelczar's "limited power of appointment" conferred by the Trust. (*Id.* at 2.) Defendant Peter V. Maimone, Esq. drafted Alfred Pelczar's will and witnessed its execution in 2013. (*Id.* at 7, ECF No. 1 at ¶ 17.)

The plaintiff objected to probate, challenging, among other things, whether the will could "cause the transfer of property of an *inter vivos* irrevocable trust by the exercise of a limited power of appointment[.]"[1] (ECF No. 20-1 at 24.) On August 20, 2015, the Honorable Peter J. Kelly admitted the will into probate, ruling that the plaintiff's objection to the disposition of the Whitestone Property had no bearing on the validity of the will itself and could be addressed in a separate proceeding. (*Id.* at 30-31, 36.) According to the plaintiff, the case is still open in the Queens Surrogate's Court. (ECF No. 1 at ¶ 26.)

---

[1] Louis M. Laurino represented Ms. Pelczar in the probate action after Mr. Maimone recused himself.

The plaintiff then brought an Article 78 petition against Judge Kelly in the Second Department. (ECF No. 20-1 at 38-65.) The Second Department dismissed the action on the merits. *In the Matter of Pelczar v. Kelly*, 131 A.D.3d 700 (N.Y. App. Div. 2015).

On January 6, 2016, the plaintiff brought a federal action against the defendants, alleging that Ms. Pelczar "breached her duty as trustee" of the Trust when she entered her father's will into probate. (Complaint at ¶ 6, *Pelczar v. Pelczar*, No. 16-CV-55 (E.D.N.Y. Jan. 6, 2016), ECF No.1.) After appearing for a pre-motion conference—at which the Honorable John Gleeson of this Court explained that the federal court likely did not have jurisdiction to hear the case—the plaintiff voluntarily dismissed the action. (Tr. of Pre-Mot. Conference at 8:23-9:9, No. 16-CV-55 (E.D.N.Y. Jan. 6, 2016), ECF No. 18.)

On July 21, 2016, Ms. Pelczar signed an executor's deed transferring the Whitestone Property from her father's estate to herself. (ECF No. 1 at ¶ 19.) The deed was recorded with the NYC Department of Finance on October 17, 2016. (*Id.*)

The plaintiff brought this suit against the same defendants, raising similar claims, on December 4, 2018. (ECF No. 1.)

## II. Standard of Review

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the complaint need not include "detailed factual allegations," it must be more than "a formulaic recitation of the elements of a cause of action" and more than an "unadorned, the-defendant-unlawfully-harmed-me

3

accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all of the allegations contained in the complaint;" however, this tenet does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678 (internal citations omitted). Because *pro se* litigants are held to less stringent standards than lawyers, courts must read *pro se* complaints liberally and interpret them to raise the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008).

### III. The Parties' Arguments

The essence of the plaintiff's most recent complaint is that Ms. Pelczar wrongfully conveyed the Whitestone Property to herself by fraudulently signing an executor's deed. (ECF No. 1 at ¶ 11.) Additionally, the plaintiff claims that the defendants made "material false representation[s]" in submitting the executor's deed because "it was not supported by an order from the court granting the title transfer." (*Id.* at ¶ 40.) Finally, the plaintiff claims that Ms. Pelczar did not consult her lawyers before she filled out the executor's deed. (*Id.* at ¶ 21.) The plaintiff asks that the Court "cancel[] the fraudulent title transfer" and "declar[e] said transfer unlawful and invalid," and seeks compensatory damages of $900,000. (*Id.* at 9-10.)

The defendants argue that this Court does not have jurisdiction to hear this case because it is subject to the probate exception to diversity jurisdiction and because the *Rooker-Feldman* doctrine prevents review of a state court ruling. (ECF No. 18 at 2–3.) Even if the Court were to reach the merits, the defendants claim that the action must be dismissed because the plaintiff has not established fraudulent conduct and because *res judicata* bars re-litigation of decided issues. (*Id.*)

## IV. Discussion

Whether a court has subject matter jurisdiction over an action is "a threshold inquiry." *Morrison v. National Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations and quotation marks omitted). "When a court is presented with a motion to dismiss both for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, the court 'must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise in jurisdiction.'" *Leskinen v. Halsey*, No. 12–CV–623, 2013 WL 802915, at *6 (E.D.N.Y. Jan. 28, 2013) (citation omitted), *report and recommendation adopted*, No. 12-CV-623, 2013 WL 801128 (E.D.N.Y. Mar. 5, 2013), *aff'd*, 571 Fed. Appx. 36 (2d Cir. 2014). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002) (citations omitted).

The plaintiff has met the burden of proving the existence of diversity jurisdiction. The plaintiff is a resident of Florida, while the defendants are residents of New York. (ECF No. 1 at ¶¶ 1, 3-5.) The plaintiff also alleges an amount in controversy greater than $75,000. (*Id.* at 10.) Thus, this Court has jurisdiction under 28 U.S.C. Section 1332.

The defendants assert that the probate exception to otherwise proper federal jurisdiction applies in this case. "The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105 (2d Cir. 2007) (citations omitted). It "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a

5

state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). However, a federal court retains jurisdiction where its exercise "will result in a judgment that does not dispose of property in the custody of a state probate court, even though judgment may be intertwined with and binding on those state proceedings[.]" *Lefkowitz*, 528 F.3d at 106.

A district court deciding a motion to dismiss on the basis of the probate exception must undertake a two-part inquiry. *Architectural Body Research Foundation v. Reversible Destiny Foundation ("ABRF")*, 335 F. Supp. 3d 621, 634 (S.D.N.Y. 2018). First, the court must decide whether the plaintiff seeks to administer an estate, probate a will, or conduct any other "*purely probate matter.*" *Lefkowitz*, 528 F.3d at 106 (quoting *Marshall*, 547 U.S. at 312). Second, the court determines whether the plaintiff seeks to "reach a *res* in the custody of a state court." *Id.* (quoting *Marshall*, 547 U.S. at 312). Because a district court "must take jurisdiction if it should," *Marshall*, 547 U.S. at 298 (citation omitted), it may decline subject-matter jurisdiction under the probate exception "only if a plaintiff seeks to achieve either of these ends in federal court." *Lefkowitz*, 528 F.3d at 106.

The plaintiff does not ask this Court to "probate a will or administer an estate directly," *Lefkowitz*, 528 F.3d at 105, so the first circumstance is plainly inapplicable. *See Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002) ("[S]ince few practitioners would be so misdirected as to seek...letters testamentary or letters of administration from a federal judge, the first prong of the probate exception is rarely, if ever, violated."). Thus, the dispositive question is whether the plaintiff asks this Court to exercise control over a *res* in the custody or control of a state court. For the reasons identified below, I find that the plaintiff does.[2]

---

[2] Because the probate exception divests the Court of subject matter jurisdiction, I do not address the defendants' other arguments for dismissal. *See Mercer v. Bank of New York Mellon, N.A.*, No. 13-CV-5686, 2014 WL 3655657, at n.6 (E.D.N.Y. July 21, 2014), *aff'd*, 609 Fed. Appx. 667 (2d Cir. 2015).

6

### a. The Plaintiff's Claims Are Over A *Res*.

In determining whether a plaintiff seeks to reach a *res* in the custody or control of a state court, the Second Circuit contrasts claims seeking "in essence, a disgorgement of funds that remain under the control of the Probate Court" with claims for "damages from Defendants personally rather than assets or distributions from [an] estate." *See Lefkowitz*, 528 F.3d at 107-08. In *Lefkowitz*, for example, the court held that the plaintiff's fiduciary duty claims seeking money damages from the defendant personally did not implicate the probate exception, even though it was "intertwine[d] with the litigation proceeding in the probate courts." *Id.* By contrast, the court held that the plaintiff's claim that the defendant wrongfully withheld estate funds was an effort to reach a *res* in the state court's control. *Id.* To provide the relief the plaintiff requested—the wrongfully held estate funds—the "federal court would have to assert control over property that remains under the control of state courts." *Id.* at 107.

As the *Lefkowitz* court made clear, "[d]etermining whether the probate exception applies...requires an examination of the nature of each claim asserted by the plaintiff, including the relief sought." *Mandell v. Dolloff*, No. 17-CV-01282, 2018 WL 3553343, at *3 (D. Conn. July 24, 2018). Moreover, courts must "examine the substance of the relief that [the plaintiff] is seeking, and not the labels they have used." *Mercer v. Bank of New York Mellon, N.A.*, 609 Fed. Appx. 677, 680 (2d Cir. 2015) (citing *Lefkowitz*, 528 F.3d at 107).

Here, the plaintiff asserts a variety of claims against his sister and her lawyers over the 2016 transfer of his father's estate. The plaintiff's first claim is that Ms. Pelczar fraudulently signed an executor's deed transferring the Whitestone Property to herself. (ECF No. 1 at 7-8.) As a remedy for his first claim, the plaintiff demands that the Court cancel the fraudulent title transfer and declare it unlawful and invalid. (*Id.* at 9.) The plaintiff's second claim is that Ms.

7

Pelczar and her lawyers made false representations to obtain the executor's deed, because there was no court order granting the title and distribution of the Whitestone Property. (*Id.* at 8-9.) As a remedy for this claim, the plaintiff demands the value of the Whitestone Property and other assets totaling $900,000. (*Id.* at 10.)

Although styled as a challenge to the defendants' use of an executor's deed, the complaint's true grievance is with the disposition of the Whitestone Property. In his opposition brief, for example, the plaintiff describes his claim as a competition of interests over the Whitestone Property: "Plaintiff has evidence proving his ownership interest in the Whitestone Property...Plaintiff has evidence proving that the Defendant, [Ms. Pelczar], has claimed an interest adverse to the Plaintiff's[.]" (Pl. Opp'n Br. (ECF No. 20-2 at 18).) The remedies that the plaintiff seeks also center on the Whitestone Property (ECF No. 1 at 8-9); the plaintiff asks the Court to cancel the defendant's title to the Whitestone Property and transfer the value of it to him. (*Id.*) In other words, the plaintiff wants this Court to reverse the probate court's decisions.

In short, it is plain that the gravamen of the plaintiff's complaint is that the defendant improperly received assets under the Surrogate Court's supervision. This Court cannot adjudicate a "complaint[] about the maladministration of [the decedent's estate], which have been proceeding in probate courts," even when it may be "mask[ed] in claims for federal relief." *Lefkowitz*, 528 F.3d at 107; *see also Fisch v. Fisch*, No. 14-CV-1516, 2014 WL 5088110, at *3 (denying jurisdiction because "[p]laintiff is essentially seeking a declaration from this Court that a portion of the estate (or its equivalent amount of money) should go to him instead of to Defendant."); *Mercer*, 609 Fed. Appx. at 679-80 (while plaintiffs styled their claims as *in personam* claims, including for breach of contract, the probate exception applied because the

8

plaintiffs asked the district court to restore funds to a trust that the trustees distributed during the period of probate administration).

### b. The *Res* Is In The Custody Or Control Of The State Court.

The plaintiff has argued here and in other proceedings that the Whitestone Property could not become property of his father's estate by operation of a limited power of appointment in the Trust. (*See e.g.*, ECF No. 20-1 at 30-31) ("In paragraphs 4 through 10 of the objections, objectant questions decedent's attempt through Article IV of the instrument to bequeath property held by the *inter vivos* trust.") Accordingly, the plaintiff may argue that the probate exception is avoided because the *res* itself is not properly within the custody or control of the state court.

In *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 254 (S.D.N.Y. 2006), a dispute about whether a certain property should be included in the decedent's estate, the district court held that it retained jurisdiction to decide title because the property at issue was presumptively outside of the decedent's estate. *See also Genecin v. Genecin*, 363 F. Supp. 2d 306, 311 (D. Conn. 2005) (the court retains jurisdiction to "adjudicate the rights of the parties" with respect to whether a disputed work of art should be included in a decedent's estate). Neither *Abercrombie* nor *Genecin*, however, articulate a blanket rule that federal courts can resolve any disputes about the composition of an estate. Rather, both courts considered whether property *outside* of the estate should be considered part of the estate. In other words, the property at issue in these title disputes was not, as an initial matter, in the custody or control of the state. *See ABRF*, 335 F. Supp. 3d at 639 ("*Genecin* is consistent with a substantial line of cases, both within and without our Circuit, reasoning that since the probate exception applies only when the *res* at issue is in the possession of the estate, it does not bar claims *by* executors to *obtain or recover* assets held elsewhere"). The plaintiff here, in contrast, seeks federal relief to recover assets that are part of

the estate and therefore in the custody of the state probate court. *Id.* at 638 ("Since the probate exception turns on whether the state court has 'custody' or 'control' of the property – not whether the estate has good title to it – there is no need or warrant for the district court to adjudicate the merits of such claims in order to determine its jurisdiction to do so.") Since the Whitestone Property is part of the estate, the state has custody and control over it, and the plaintiff must go to the Surrogate's Court to litigate his claim of title to the same asset.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the plaintiff's claims is granted. In light of the plaintiff's *pro se* status, the Court grants the plaintiff leave to file an amended complaint within 30 days of the date of this Memorandum and Order. If the plaintiff fails to file an amended complaint within 30 days, the case will be dismissed and judgment will enter. An amended complaint that merely repeats the allegations in the original complaint, which the Court has found inadequate to support subject matter jurisdiction, will not suffice. The amended complaint must demonstrate that the Court has subject matter jurisdiction over the plaintiff's claims, and that no exceptions exist that would deprive it of jurisdiction. The plaintiff is advised that the amended complaint will completely replace the Complaint, must be captioned "Amended Complaint," and must bear the same docket number as this Memorandum and Order. **SO ORDERED.**

                                                s/Ann M. Donnelly
                                                Ann M. Donnelly
                                                United States District Judge

Dated: Brooklyn, New York
         September 9, 2019