UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
**JAMES FREDRIC PELCZAR**,                                     :
                                                               :
                Plaintiff,     :
                                                               :   **MEMORANDUM DECISION AND**
        – against –                                    :   **ORDER**
                                                               :
                                                               :   18-CV-6887 (AMD) (LB)
**DOREEN M. PELCZAR**, **PETER V.**                            :
**MAIMONE ESQ.**, and **ALBERT MAIMONE &**                     :
**ASSOCIATES, P.C.**,                                          :
                                                               :
                Defendant.     :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       The *pro se* plaintiff sued the defendants—his sister and the law firm that represented their father's estate—for fraudulently transferring ownership of his parents' house after his father died. The plaintiff contends instead that the house was still part of a trust that the plaintiff and his sister controlled. Before the Court are the following: (i) defendants Peter Maimone and Albert Maimone & Associates, P.C.'s motion for judgment on the pleadings (ECF No. 79); (ii) defendant Doreen Pelczar's motion for judgment on the pleadings (ECF No. 80); and (iii) the plaintiff's motion to dismiss the defendants' counterclaims (ECF No. 78). As explained below, the motions are granted.

       On September 24, 1957, Alfred and Josephine Pelczar purchased property located at 7-22 151st Place, Whitestone, NY 11357 (the "Whitestone Property"). On March 19, 1997, the couple formed the Alfred S. Pelczar and Josephine C. Pelczar Irrevocable Trust 1997, designated the plaintiff and Doreen Pelczar as trust beneficiaries, and transferred the Whitestone Property to the

trust.  (ECF No. 79-9 at 2; ECF No. 79-3.)[1]  The terms of the trust provided that upon the Pelczars' deaths, "this Trust shall terminate" and the trust estate "shall be paid and distributed to the beneficiaries . . . as the Grantors may direct and appoint by their Last Will and Testament." (ECF No. 79-3, Ex. 2 at 5.)  On January 24, 2013, Alfred Pelczar executed his Last Will and Testament, in which he devised and bequeathed "all of the property remaining in the Trust upon his death, including but not limited to the [Whitestone Property], . . . solely to [his] daughter, [Doreen Pelczar]."  (ECF No. 79-6.)  Alfred Pelczar died on February 8, 2014.[2]  On July 21, 2016, Doreen Pelzcar, in her capacity as executor of her father's estate, signed a deed transferring the Whitestone Property to herself.[3]

On December 4, 2018, the plaintiff brought this action under Article 15 of the New York Real Property Actions and Proceedings Law ("RPAPL").[4]  (ECF No. 1.)  I dismissed the complaint for lack of subject-matter jurisdiction because I found that it fell within the probate exception.  (ECF No. 24.)  The Second Circuit affirmed my decision in part and vacated in part, *Pelczar v. Pelczar*, 833 F. App'x 872, 875 (2d Cir. 2020) (summary order), finding that this Court has jurisdiction to adjudicate the plaintiff's damages claim (ECF No. 33 at 4).  On remand, the plaintiff filed an amended complaint alleging a fraudulent misrepresentation claim (ECF No.

---

[1] The plaintiff attached the trust document to the Amended Complaint (ECF No. 44, Ex. 2 at 38); further, the terms of the trust are clearly "integral to the complaint."  The Court is therefore permitted to review them in connection with this decision without converting the motions for judgment on the pleadings into motions for summary judgment.  *See Byrd v. City of New York*, No. 4-CV-1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005).

[2] On August 20, 2015, the Honorable Peter J. Kelly of Queens County Surrogate's Court admitted the will into probate, over the plaintiff's objection.  The plaintiff has previously claimed that the action is still pending in the Surrogate's Court.

[3] The Court takes judicial notice of this document.  (ECF No. 79-8.)  *See In re Enron Corp.*, 379 B.R. 425, 431 (S.D.N.Y. 2007).

[4] The parties are of diverse citizenship; the plaintiff is a resident of Florida, and the defendants are residents of New York.

2

44), which the defendants moved to dismiss (ECF Nos. 47, 51).  I denied the motion on February 24, 2022.  (ECF No. 63.)[5]

Doreen Pelczar answered the amended complaint on November 21, 2022.  (ECF No. 74.)  On December 15, 2022, the Maimone defendants answered and asserted one counterclaim seeking attorneys' fees.  (ECF No. 76.)  The plaintiff moved to dismiss the defendants' counterclaims on December 27, 2022, and all defendants filed their respective motions for judgment on the pleadings on February 9 and 10, 2022.

The defendants argue that the trust terminated when Alfred Pelczar died, at which point the Whitestone Property vested immediately in the trust's remainder beneficiary, Doreen Pelczar, through the validly exercised testamentary power of appointment.  (ECF No. 86 at 2.)  The plaintiff alleges that the Pelczars transferred the Whitestone Property to the trust, and that it remained a trust asset after Alfred Pelczar's death.  To support this claim, he says that (i) the New York City Department of Finance and the City of New York sent him certain tax bills and records that show he was a co-owner of the property after Alfred Pelczar's death (ECF No. 44 at ¶ 18), and (ii) the defendants did not comply with New York state tax laws (*id*. at ¶¶ 61, 69).  According to the plaintiff, Doreen Pelczar therefore committed fraud when she executed the Whitestone Property deed, and the Maimone defendants, who represented Doreen Pelczar in the state probate proceeding, helped perpetuate this fraud.

After the parties submitted their briefs on this motion, I directed the plaintiff to submit a letter "clearly articulating the damages he sustained as a result of the defendants' alleged misrepresentations."  (*ECF Order dated August 4, 2023*.)  The plaintiff submitted the following response:

---

[5] The defendants appealed, but later voluntarily dismissed the appeal.  (ECF Nos. 64, 70.)

> Pursuant to the Order issued by Honorable Judge Ann M. Donnelly (EOF Doc. No. 87), I state the following regarding the damages I sustained as a result of Defendants Doreen M. Pelczar, Peter V. Maimone, and Albert Maimone & Associates P.C.("Defendants") misrepresentations:
>
> DAMAGES:
>
> 1. Research assistant expenses $3,750 dollars
>
> 2. Non-probate damages (ECF Doc No.44 Ex.23) $231.000 dollars
>
> 3. Damages from misrepresentation of trust property $890.000 dollars
>
> (Defendants misrepresented the value of the trust property at the date of my father's death at $669,000, and Plaintiff's aforementioned value of the trust property at $890,000 is the value at the time of filing this lawsuit. *See* ECF Doc. No.44 Ex.23)
>
> Total: $1,124,750
>
> (Against all Defendants jointly and severally)

(ECF No. 87.) The defendants respond that because Doreen Pelczar "already owned the property as of the moment of Alfred [Pelczar's] death as the duly appointed trust remainder beneficiary . . . there can be no possibility of damages."  (ECF No. 88 at 2.)

**LEGAL STANDARD**

A court reviewing a motion for judgment on the pleadings pursuant to Rule 12(c) applies the standard used for analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Hogan v. Fischer*, 738 F.3d 509, 514–15 (2d Cir. 2013); *Olivo v. City of New York*, No. 14-CV-4966, 2015 WL 4645271, at *2 (E.D.N.Y. Aug. 4, 2015); *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 12-CV-1956, 2013 WL 4500730, at *3 (E.D.N.Y. Aug. 20, 2013).  The Court must accept as true the factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Kirkendall v. Haliburton*, 707 F.3d 173, 178-79 (2d Cir. 2013) ("We review a judgment under Federal Rule of Civil Procedure 12(c) de novo, accepting the

4

complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor."); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *Buch v. Farmingdale State College*, No. 12-CV-1762, 2013 WL 789354, at *10 (E.D.N.Y. March 4, 2013); *see also Meadows v. City of New York*, No. 10-CV-286, 2011 WL 864832, at *3 (E.D.N.Y. March 11, 2011) (noting that "a Rule 12(b)(6) motion to dismiss tests the legal, not the factual sufficiency of a complaint").

To survive a Rule 12(c) motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). To satisfy this "plausibility" requirement, a complaint must do more than make "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the elements of the cause of action must be supported by well-pleaded facts that permit the court to infer "that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). And, while the review of a *pro se* complaint for sufficiency requires "special solicitude," *Hogan*, 738 F.3d at 515 (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)), the pleadings of these plaintiffs must still "contain factual allegations sufficient to raise a right to relief above the speculative level," *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

In a diversity action such as this one, "a federal court . . . must apply the state substantive law that would be applied by its forum state . . . ." *N.A.A.C.P. v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 477 (E.D.N.Y. 2003) "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which

5

the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Solow v. Citigroup, Inc.*, 507 Fed.Appx. 81, 83 (2d Cir. 2013) (summary order) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)); *see also High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 957 (2d Dep't 2011). Fraud claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), and "a plaintiff must allege facts that give rise to a strong inference of fraudulent intent." *Eaves v. Designs for Fin., Inc.*, 785 F.Supp.2d 229, 247 (S.D.N.Y. 2011) (internal citations and quotation marks omitted).

**A.      Motions to Dismiss Under Rule 12(c)**

The plaintiff has not satisfied Rule 9(b)'s heightened pleading standard. He has not established that the title to the Whitestone Property remained a trust asset, rather than vesting immediately in Doreen Pelczar upon Alfred Pelczar's death, and he has not sufficiently pled damages.

"[A] settlor has the absolute power to provide for the termination of [a] trust upon the happening of any eventuality . . . ." 106 N.Y. Jur. 2d Trusts § 606. In New York, "[w]hen the purpose for which an express trust is created ceases, the estate of the trustee also ceases." *Id.* § 7-2.2. "The effect of the statute is to vest title to real property at once and automatically in the trust remaindermen, without the necessity for any act or intervention by the trustee, and to render it unnecessary for the trustee to make a formal conveyance of the trust realty." *Marie Roucco Fam. Tr. v. Roucco*, 40 Misc. 3d 1202(A) (Civ. Ct. 2013) (citing 106 N.Y. Jur. 2d Trusts § 618). In other words, "upon termination of a trust, title to any real property held by the trust is immediately vested in the beneficiaries." *Olivieri v. Olivieri*, 24 Misc. 3d 1201(A) (Sup. Ct. 2009) (citations omitted).

The trust's terms provide that "[u]pon the death of the Grantors, this Trust shall terminate," and all trust assets, including real property, "shall be paid and distributed . . . [t]o or among any one or more members of a class consisting of beneficiaries of the Grantors . . . as the Grantors may direct and appoint by their Last Will and Testament." (ECF No. 79-3, Ex. 2 at 5.) Thus, the trust terminated on February 8, 2014, when Albert Pelczar died, and the trust assets were distributed to the beneficiaries that he appointed in his will.

When the trust was formed, the beneficiaries included both Doreen Pelczar and the plaintiff. However, Alfred Pelczar modified the trust in Article IV of his will to make Doreen Pelczar the only beneficiary:

> I hereby exercise the limited power of appointment conferred upon me in subparagraph (F)(1) of Article Fourth of the ALFRED S. PELCZAR AND JOSEPHINE C. PELCZAR IRREVOCABIJE TRUST 1997, dated March 19, 1997. In accordance with said power of appointment, I hereby give, devise and bequeath all of the property remaining in the trust estate of the ALFRED S. PELCZAR AND JOSEPHINE C. PELCZAR IRREVOCABIE TRUST 1997 upon my death, including but not limited to the real property located at 7-22 151st Place, Whitestone, New York 11357 and any other income and principal, solely to my daughter, DOREEN MARIE PELCZAR, if she shall survive me, or to her issue "per stirpes" and not "per capita" if she shall predecease me leaving issue surviving me.

(ECF No. 79-6 at 2) (emphasis omitted). Alfred Pelczar clearly intended that all trust assets go to Doreen Pelczar; it is also undisputed that the Whitestone Property was a trust asset at the time of Alfred Pelczar's death. Accordingly, on February 8, 2014, Doreen Pelczar was the sole owner of the Whitestone Property.

The plaintiff does not have a legal claim to the Whitestone Property. The plaintiff's claim that the Whitestone Property was "Irrevocable Trust property" after Alfred Pelczar's death is refuted by the terms of the trust, which provided that the trust automatically terminated when Alfred Pelczar died. *See Olivieri*, 24 Misc.3d at *3 (noting that when a trust terminates, real

7

property vests "immediately" in the trust beneficiaries). Further, the plaintiff has no ownership interest as a beneficiary remainderman; Alfred Pelczar vested all trust assets in Doreen Pelczar, which divested the plaintiff of any legal interest. The plaintiff does not cite any evidence that he is entitled to the property as trustee, trust beneficiary, tenant in common, or otherwise. That certain tax bills "listed [him] as one of the owners" does not change the analysis; indeed, the plaintiff does not explain how a designation in a tax bill would override the terms of a trust.

The plaintiff's allegations that "Doreen [and her lawyers] intended to defraud [him] out of the [trust] property when she filed" the probate petition, the executor's deed, the list of assets inventory, and the real property transfer report (ECF No. 44, Ex. A at 13) are similarly insufficient. He cites New York State tax laws but does not explain how these statutes affect the operation of a valid will and trust. He also claims that the New York state surrogate judge "never issued an Order/Decree terminating the Irrevocable Trust and subsequently transferring the Whitestone Property into my father's Estate . . . ." (*Id*. at 15.) However, as explained above, the trust terminated by its terms when Alfred Pelczar died, and Doreen Pelczar was the sole remainder beneficiary of the trust according to the terms of Alfred Pelczar's will.

Because the plaintiff's legal claim to the Whitestone Property extinguished when Alfred Pelczar died, the defendants' statements in the Surrogate's Court could not have affected the judge's decision as to ownership of the property. The plaintiff also cannot demonstrate a plausible claim for reasonable reliance.

For the same reasons, the plaintiff has not pled recoverable damages. *See Brown Media Corp. v. K & L Gates, LLP*, 586 B.R. 508, 532 (E.D.N.Y. 2018). He must demonstrate that his alleged damages are the "direct, immediate, and proximate result of the misrepresentation." *Kregos v. Assoc. Press*, 3 F.3d 656, 665 (2d Cir. 1993). "Rule 9(b) does not require plaintiffs to

8

calculate their damages with particularity," *Tyman v. Pfizer, Inc.*, No. 16-CV-06941, 2017 WL 6988936, at *6 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16-CV-6941, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); however, "[f]ederal district courts interpreting New York State law have held that merely asserting that [the plaintiff] 'suffer[ed] damages' without particular facts as to how they were damaged" is not sufficient, *Int'l Bus. Machines Corp. v. Dale*, No. 11-CV-951, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (internal citations omitted). *See MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 313 (E.D.N.Y. 2010), *aff'd sub nom. MetLife Invs. USA Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011) ("Moreover, the Pratt Estate alleges no damages resulting from the alleged conspiracy. Therefore, the Pratt Estate's claim for conspiracy to commit fraud is also futile."); *accord Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534, 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011) ("A claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages, even where the exact amount of damages is alleged.").

In response to the Court's order that the plaintiff "clearly articulat[e] the damages [] sustained," the plaintiff filed a letter with three line items claiming damages of over one million dollars for "research assistant expenses," "[n]on-probate damages," and "[d]amages from misrepresentation of trust property." (ECF No. 87.) The letter merely repeats an estate asset form that Doreen Pelczar submitted in probate court. *See* ECF. No. 44, Ex. 23. The plaintiff does not explain why he is entitled to "non-probate damages," nor does he clarify how his damages are related to the alleged misrepresentations. Accordingly, dismissal is also warranted on this ground. *Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 139 (E.D.N.Y. 2017) ("The amended complaint is fatally deficient because [the plaintiff] did not assert compensable

9

damages resulting from [the defendants'] alleged fraud.") (citation omitted); *see also, e.g.*, *Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 623 (S.D.N.Y. 2013) ("Because Plaintiffs have not identified a distinct harm stemming from the alleged fraudulent conduct, they have failed to state claims for fraud . . . .").

As the plaintiff has had multiple opportunities to pursue this litigation, and because the "defects in [the plaintiff's] claims are substantive and would not be cured if afforded an opportunity to amend," the complaint is dismissed with prejudice. *Frazer v. Bakery & Drivers Loc. 550 & Indus. Health Benefit & Pension Plan*, No. 21-CV-00402, 2023 WL 2787630, at *13 (E.D.N.Y. Apr. 5, 2023)

**B.      Motion to Dismiss Counterclaim**

On December 15, 2022, the Maimone defendants brought a counterclaim seeking attorneys' fees because "[t]he claims asserted by the Plaintiff are frivolous, asserted in bad faith and/or are intended to harass or maliciously injure the [defendants]." (ECF No. 76 ¶ 103.) The plaintiff moves to dismiss, citing Rule 12(b)(6) and the "American Rule."[6] (ECF No. 78 at 4–5.)

The Supreme Court has recognized three exceptions to the general rule that each party must pay its own attorneys' fees: (i) where a statute or enforceable contract provides for an award of attorneys' fees; (ii) where a prevailing plaintiff confers a common benefit upon a class or fund; and (iii) where a party willfully disobeys a court order or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Raff v. Maggio*, 743 F. Supp. 147, 149 (E.D.N.Y. 1990) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)) (cleaned up). The Second Circuit has "interpreted the bad faith standard

---

[6] "Ordinarily, under the 'American Rule,' each party must bear its own attorneys' fees." *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14-CV-224, 2018 WL 3574864, at *5 (S.D.N.Y. July 25, 2018), *aff'd*, 771 F. App'x 71 (2d Cir. 2019) (summary order).

10

restrictively to ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)) (cleaned up). Moreover, "[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). There are some exceptions to the "special solicitude" rule in the sanctions context, including when the *pro se* party is a former attorney or a "serial litigant." *See, e.g.*, *Keitel v. D'Agostino*, No. 21-CV-8537, 2023 WL 3560553, at *4 (S.D.N.Y. May 19, 2023). Courts have also awarded sanctions against *pro se* litigants where the claims involve "frivolous and inflammatory accusations," "repeated attacks," or an "inability to heed [the] Court's warnings." *Id.*; *see also Brady v. Goldman*, 2016 WL 8201788, at *1-2 (S.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL 111749 (S.D.N.Y. Jan. 11, 2017), *aff'd*, 714 F. App'x 63 (2d Cir. 2018) (stating that "dragging more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance" were "a near perfect example of frivolous conduct," and imposed attorneys' fees as a sanction).

As explained above, the plaintiff's claims are meritless. Nevertheless, the record does not reflect that the plaintiff acted in an "inflammatory" way, nor can his conduct be described as "vexatious." The plaintiff pursued what he thought was a colorable claim. The Maimone defendants have not demonstrated that sanctions are warranted. *Accord City Merch., Inc. v. Tian Tian Trading, Inc.*, 2022 WL 827843, at *4 (S.D.N.Y. Feb. 28, 2022) (noting that "discretion typically leads Courts to afford pro se litigants at least more than one warning before imposing sanctions"). The plaintiff's motion is granted, and the Maimone defendants' counterclaim is dismissed without prejudice.

11

## CONCLUSION

For these reasons, the Maimone defendants' counterclaim is dismissed without prejudice. The defendants' respective motions for judgment on the pleadings are granted, and the plaintiff's complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

                                                                                                    s/Ann M. Donnelly
                                                               ANN M. DONNELLY
                                                                United States District Judge

Dated: Brooklyn, New York
           September 22, 2023